## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **ESCO RIDEAU** | * | **CIVIL ACTION NO. 06-2345** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## **REPORT AND RECOMMENDATION**

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Esco Rideau, born August 29, 1947, filed applications for a period of disability, disability insurance benefits, and supplemental security income payments on June 29, 2004, alleging disability as of April 7, 2004, due to kidney failure and diabetes.[1]  A partially favorable decision was issued on March 17, 2006, finding that claimant was not disabled prior to December 25, 2005, but became disabled on that date and was disabled through the date of the decision.[2] (Tr. 9-17).  Claimant died on June 1, 2007.

---

[1] Claimant filed prior applications for a period of disability, disability insurance benefits, and supplemental security income payments on July 19, 2002, which was denied.

[2] Claimant last met the insured status requirements of the Social Security Act through June 30, 2005.  (Tr. 15).

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled and that this case should be reversed.

In fulfillment of F.R.Civ.P. 52, I find that this case should be reversed, based on the following:

**(1) Records from Southwest Louisiana Primary Care Center dated December 22, 2003 to May 11, 2004**. Claimant was treated for chronic pain all over, eye pain, right knee and left arm pain, hypertension, and diabetes mellitus type 2. (Tr. 88-93). He was referred to University Medical Center. (Tr. 90).

**(2) Records from LSUMC/University Medical Center ("UMC") dated April 17, 2003 to July 5, 2004**. On June 10, 2004, claimant complained of generalized pain. (Tr. 104). He was being followed up for diabetes mellitus, hypertension, and cataracts. His hypertension was under good control, and his diabetes was under historically poor control. (Tr. 105).

On July 5, 2004, claimant complained that his vision was getting worse. (Tr. 100). He also reported back and left shoulder pain. He had a history of a positive Tb skin test.

**(3) Consultative Examination by Dr. Robert Wood dated August 21, 2004**.

Claimant complained of low back and multiple joint pains, especially in the knee. (Tr. 116). He stated that he was a diabetic. He said that his hands sometimes got cold. He also reported poor vision and cataracts in the right eye. His medications included Celebrex, Accupril, Lipitor, Glucophage, Folex, and Glucotrol XL.

On examination, claimant was 65 inches tall and weighed 145 pounds. His blood pressure was 173/98. He ambulated well, and had no difficulty getting up and off the table or out of the chair.

Extraocular movements were intact. Claimant's pupils were equal, round, and reactive to light. Sclera was clear, with no nystagmus. The Snellen eye chart showed 20/200 on the right eye and 20/50 on the left eye without glasses.

Pulses in the feet were symmetric and normal. (Tr. 117). Claimant had no clubbing, cyanosis, or edema. Grip strength was 5/5. He had no muscle atrophy or joint deformity. Straight leg raise was negative.

Claimant walked on his heels and toes and had tandem gait without any difficulty. He had no varices or ulcerations on his feet. Motor strength was 5/5.

Claimant's sensory exam was intact. He had no cerebellar signs. Deep tendon reflexes were normal and symmetric.

Dr. Wood's impression was diabetes mellitus with no evidence of peripheral neuropathy, a cataract in the right eye with decreased vision, and low back pain, with a negative straight leg raise and no assistive device required for ambulation. He opined that claimant should have no difficulty with sitting, standing, walking, or lifting objects 20 pounds or less. He had no difficulty hearing, speaking, or handling objects.

**(4) Consultative Eye Examination by Dr. Kenneth LaFleur dated November 10, 2004**. Examination of the eye revealed left homonymous hemianopia, normal extraocular muscle function with orthophoria at 20' Nd 14", bilateral +1 nuclear sclerosis, and background diabetic retinopathy with small areas of hemorrhage. (Tr. 118). Dr. LaFleur's diagnosis was background diabetic retinopathy. He determined that claimant could not operate machinery, and was to avoid objects in workplace pathways and people approaching from the side.

**(5) Residual Functional Capacity ("RFC") Assessment – Physical dated November 7, 2004**. The state agency examiner determined that claimant could lift/carry 50 pounds occasionally and 25 pounds frequently. (Tr. 122). He could stand/walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could occasionally perform all postural activities. (Tr. 123).

**(6) Records from Opelousas General Hospital dated December 15-29, 2004**. On December 15, 2004, claimant was admitted for vomiting and abdominal pain. (Tr. 145). Other problems included cataracts, CVA, dyslipidemia, and arthritis. (Tr. 142).

On December 29, 2004, claimant was at a clinic for a checkup for stroke-like symptoms, and the clinic staff called an ambulance. (Tr. 136, 161). He had generalized weakness and dizziness. (Tr. 130). An ECG was abnormal. (Tr. 138). The diagnosis was weakness, elevated blood pressure, and noncompliance with medications. (Tr. 131, 139).

**(7) Records from Southwest Primary Health Care dated July 27, 2004 to October 12, 2005**. On August 9, 2004, claimant was scheduled for an MRI of the brain for a possible infarction of the right parietal occipital lobe. (Tr. 168-69). On October 7, he complained of knee pain, as well as intermittent back and shoulder pain. (Tr. 166). The assessment was hypertension with CVA (July), hyperkalemia, and diabetes mellitus.

On November 9, 2004, claimant was doing well. (Tr. 165). His hypertension and diabetes were stable.

On January 10, 2005, claimant complained of eye and temple pain. (Tr. 159). He was concerned about an episode two weeks prior of a possible stroke, with an

5

episode of forgetfulness, mild disorientation, and difficulty with speech. The impression was hypertension and an old CVA. In a report dated March 1, 2005, it was noted that claimant had gone to UMC for a follow up MRI, but could not proceed with it because of residual pellets in his skull. (Tr. 158).

On March 24, 2005, claimant denied any complaints. (Tr. 156). He reported decreased vision, but could not afford eye glasses. He stated that he could not remember like he used to. His right extremities were slightly weaker than the left. He was referred to a nephrology clinic because of his microalbumin results. (Tr. 155).

On August 11, 2005, claimant complained of right knee, ankle, and left shoulder pain. (Tr. 149). On examination, he had decreased vision. He was prescribed Ultracet for pain, and referred to Earl K. Long's eye clinic.

On October 12, 2005, claimant saw a nutritionist for uncontrolled diabetes. (Tr. 148). He had trouble seeing and was unable to read. He received a meal plan, and was instructed to apply to Medicaid for diabetes supplies as needed.

**(8) Records from Opelousas General Hospital dated December 25, 2005 to January 13, 2006**. Claimant was admitted on December 25, 2005, with shortness of breath, nausea, and right rib pain on the lateral side. (Tr. 187). A CT scan of the head showed old cerebellar infarcts, basal ganglia lacunar infarcts, chronic white

matter small vessel ischemic changes with small focal infarcts, a large right parietal occipital area of diminished attenuation with the appearance of ischemia, and a small left parietal vertex cortical low attenuation lesion which was either subacute or old. (Tr. 196). A metastatic series showed osteopenia. (Tr. 199). The diagnoses were pneumonia, congestive heart failure, anemia, renal failure, mitral valve disorder, chronic airway obstruction, nephrotic syndrome, type II diabetes mellitus with ophthalmic manifest, controlled, background diabetic retinopathy, diabetic neuropathy, myeloma (bone marrow cancer), end stage renal disease, and hyperlipidemia. (Tr. 186, 188, 189, 191, 193, 285). He was started on dialysis. (Tr. 190, 486-503). He was assessed with end stage renal disease. (Tr. 504).

**(9) Claimant's Administrative Hearing Testimony**. At the hearing on September 28, 2005, claimant was 58 years old. (Tr. 513). He had completed the eighth grade. He had done refractory work as a labor hand, and had worked as a brick layer's helper. (Tr. 515).

Regarding complaints, claimant reported that since the last hearing, he had had some strokes and his eyesight had become worse because of diabetes and cataracts. (Tr. 511, 513). He stated that his driver's license had been denied. (Tr. 511). He reported that he took pills for his diabetes.

Additionally, claimant reported that he had high blood pressure. (Tr. 514). He had cholesterol problems, arthritis, and pain in his shoulders, legs, and knees. He complained that his ankles and feet swelled and turned black.

Regarding activities, claimant testified that he did not do much during the day. (Tr. 512). He stated that he just sat around, or talked to his neighbor next door. He also said that he talked on the phone with his relatives.

As to limitations, claimant reported that he could pick up about five pounds because of back pain. (Tr. 516). He stated that he could not dial a phone, turn the knob on the television, watch television, or walk down the street because of his poor vision. (Tr. 516-17).

**(10) The ALJ's Findings**. Claimant argues that the ALJ erred in finding that prior to December 25, 2005, claimant's impairments did not cause more than a minimal impact on his ability to perform basic work activities for 12 consecutive months and therefore the claimant did not have a severe impairment or impairment or combination of impairments. Because I find that the ALJ failed to consider all of the records from claimant's treating physicians, I recommend that this case be

**REVERSED**, and that claimant be awarded benefits from April 7, 2004 to June 30, 2005.[3]

The ALJ's analysis of the medical records in this case consists of a total of two paragraphs, primarily consisting of the reports of the consultative examiner and the state agency consultant. (Tr. 16). According to the ALJ's summary, Dr. Wood's report indicates that claimant had essentially no limitations, but would be restricted to lifting no more than 20 pounds. (Tr. 116-17). The ALJ also noted that the examiner at Disability Determinations Services found that claimant had a medium residual functional capacity. (Tr. 121-28). However, the ALJ's decision does not contain any reference whatsoever to the records from claimant's treating physicians, who indicated that claimant had had a stroke in July of 2004, and another possible CVA with an episode of forgetfulness, mild disorientation, and difficulty with speech in December of 2004. (Tr. 136, 142, 159, 161, 166).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d

---

[3]These are the dates of claimant's onset of disability and the date through which he remained insured for disability insurance benefits, respectively.

232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with ... other substantial evidence.*" (emphasis added). *Newton,* 209 F.3d at 455 (citing 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

In this case, the ALJ found claimant disabled as of December 25, 2005, based on the records from Opelousas General Hospital indicating that claimant had kidney failure and progressive worsening of diabetes. (Tr. 16-17). He noted that claimant was referred to an outpatient dialysis center, and diagnosed with end-stage renal disease. However, the record reflects that claimant had a history of disabling conditions related to his diabetes, which undoubtedly did not result in these morbid complications overnight.

Here, the ALJ erred in failing to consider the evidence from claimant's treating physicians indicating that claimant had had strokes July and December, 2004. A CT

scan of the head taken on January 10, 2006, showed "old" cerebellar infarcts, basal ganglia lacunar infarcts, chronic white matter small vessel ischemic changes with small focal infarcts, a large right parietal occipital area of diminished attenuation with the appearance of ischemia, and a small left parietal vertex cortical low attenuation lesion, which was either subacute or "old." (Tr. 196). This evidence indicates that the strokes occurred prior to December 25, 2005. Additionally, the medical records indicate that claimant was having problems with his kidneys on March 29, 2005, when he was referred to a nephrology clinic because of his microalbumin results.[4] (Tr. 155). Based on this evidence, the decision of the ALJ should not stand.

Accordingly, it is my recommendation that the Commissioner's decision be **REVERSED**, and the claimant be awarded benefits. The undersigned recommends that and the claimant is awarded appropriate benefits commencing June 29, 2004, the date of the filing of the applications.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk

---

[4] A microalbumin test evaluates albumin, which is found in the urine when the kidneys are damaged, most frequently from diabetes. http://health.yahoo.com/urinary-diagnosis/microalbumin-urine-test/healthwise–tu6440.html.

of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION,* **79 F.3D 1415 (5TH CIR. 1996).**

Signed December 30, 2007, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE